UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL     'O' JS-6

| Case No. | 2:14-cv-08182-CAS(PLAx) | Date | January 5, 2015 |
|---|---|---|---|
| Title | WATERMILL VENTURES, LTD., ET AL. v. CAPPELLO CAPITAL CORPORATION | | |

| Present: The Honorable | Christina A. Snyder | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Mark Passin | Robert Platt |
| Howard Cooper | Katrina Dela Cruz |

**Proceedings:**     DEFENDANT'S MOTION TO DISMISS PETITION TO VACATE ARBITRATION AWARD (Dkt. No. 20, filed November 11, 2014)

PLAINTIFF'S MOTION TO SET A SCHEDULE FOR DISCOVERY (Dkt. No. 28, filed December 12, 2014)

## I.     INTRODUCTION

On October 22, 2014, plaintiffs Watermill Ventures, Ltd. and Watermill-Toolrock Enterprises, LLC (collectively "Watermill") filed the instant action against defendant Cappello Capital Corporation ("Cappello").  The complaint seeks to vacate an arbitration award entered in favor of Cappello on October 23, 2013, on the ground that Cappello procured that award by fraudulently concealing an assignment that breached the contract containing the agreement to arbitrate.  See Dkt. No. 1 ("Compl.") ¶ 1.

On November 11, 2014, Cappello filed a motion to dismiss the action.  Dkt. No. 20.  Watermill filed an opposition on December 15, 2015, Dkt. No. 32, and Cappello filed a reply on December 22, 2015, Dkt. No. 36.  On December 12, 2014, Watermill filed a motion for an order setting a scheduling conference regarding discovery in this matter.  Dkt. No. 28.  Cappello filed an opposition to the discovery motion on December 19, 2014, Dkt. No. 35, and Watermill filed a reply on December 23, 2014, Dkt. No. 37.  The Court held a hearing on both motions on January 5, 2015.  After considering the parties' arguments, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O' JS-6

| Case No. | 2:14-cv-08182-CAS(PLAx) | Date | January 5, 2015 |
| --- | --- | --- | --- |
| Title | WATERMILL VENTURES, LTD., ET AL. v. CAPPELLO CAPITAL CORPORATION | | |

## II.    FACTUAL BACKGROUND

The complaint alleges the following facts.  In August 2006, Watermill engaged Cappello to help raise funds for the acquisition of a steel company named Timken Latrobe Steel ("Latrobe").  Compl. ¶ 13.  Subsequently, a dispute arose between the two parties over the meaning and scope of a provision in the underlying financing agreement through which Watermill agreed to share a percentage of its ownership interest in the proceeds of an eventual sale of Latrobe, provided that Cappello fulfilled certain conditions.  The parties refer to this dispute as the "Equity Split Dispute".  Id. ¶¶ 13–14.

On February 9, 2009, the parties entered into an agreement (the "Settlement Agreement") to resolve disputes between them, including the Equity Split Dispute.  Id. ¶ 15.  The Settlement Agreement contained a provision requiring the parties to submit the Equity Split Dispute to binding arbitration if it ever ripened into an actual dispute to be litigated in the event of a liquidation event, including a sale of Latrobe.  Compl. ¶ 15; see Dkt. No. 20-1 (Platt Decl.) Ex. 1 ¶ 3.  The "sole issues" to be arbitrated were "whether Cappello is entitled to a Disputed Promote Share from Watermill . . . and the amount to which Cappello is entitled, if any, it being understood that Cappello may pursue those issues solely on the basis of a contract or implied contract theory . . . ."[1]  Platt Decl. Ex. 1 ¶ 3.

The Settlement Agreement also contained an "Anti-Assignment Provision" that reads as follows:

> The Parties expressly represent and warrant that they have not heretofore assigned or transferred, caused to be assigned or transferred or purported in any way to assign or transfer nor will they hereafter assign or transfer to any person, thing, corporation, partnership, association or other entity whatsoever any of the matters which are released herein or any rights in this agreement or the Disputed Promote Share . . . .

---

[1]The parties use "Disputed Promote Share" to refer to the ownership interest at issue in the Equity Split Dispute.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-08182-CAS(PLAx) | Date | January 5, 2015 |
| Title | WATERMILL VENTURES, LTD., ET AL. v. CAPPELLO CAPITAL CORPORATION | | |

Id. ¶ 17; Compl. Ex. A at 9.  Watermill represents that it insisted on this provision because of a perception that Cappello "had been facing substantial financial challenges such that [it] likely would be unable to prosecute the Equity Split Dispute."  Id. ¶ 18. Watermill alleges that the Anti-Assignment Provision was a material term of the Settlement Agreement because it "related to the ability of the parties to arbitrate" the dispute.  Id. ¶¶ 18, 33.

On November 30, 2012, Cappello demanded that the Equity Split Dispute be arbitrated.  Id. ¶ 19.  Watermill alleges that, prior to filing its demand for arbitration, Cappello reached an agreement with Robert Deutschman ("Deutschman") providing that, in exchange for financial support in connection with the arbitration, Cappello would assign its rights to the disputed equity interest to Deutschman, the Robert & Ellen Deutschman Family Trust (the "Deutschman Trust"), and a newly created entity called Cappello Group Inc.[2]  Id. ¶ 20.  This alleged agreement was memorialized in writing on January 1, 2013.  Id.  Cappello did not inform Watermill of this assignment.  Id. ¶ 21. Watermill asserts that it agreed to arbitrate the Equity Split Dispute unaware of the assignment.  Id. ¶ 22.

The arbitration took place in late July and early August 2013.  Id.  During the arbitration, Cappello allegedly held itself out to Watermill and the arbitrator as the actual and sole owner and claimant.[3]  Id. ¶ 23.  On October 23, 2013, the arbitrator issued an

---

[2]The precise relationship of Deutschman and the other purported assignees to Cappello is unclear from the parties' papers.

[3]As examples of such representations, Watermill alleges that (1) Cappello's demand for arbitration listed Cappello as the sole claimant; (2) Cappello's arbitration brief stated that Cappello was entitled to receive the award; (3) Cappello's post-hearing opening brief referred to the claim as Cappello's "claim for its bargained-for share of [Watermill's] promote of the Latrobe transaction"; (4) an evidentiary motion filed by Cappello during the arbitration outlined "its relief" in that proceeding; (5) Cappello's counsel referred in the arbitration hearing to getting "our" money; and (6) Deutschman stated on cross-examination at the hearing that he would consult with tax counsel as to how to treat any award that Cappello received.  See Compl. ¶¶ 24–26 & Ex. G. Watermill asserts that these were misrepresentations because Cappello and Deutschman knew that Cappello would not be receiving the award.  Id. ¶ 26.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-08182-CAS(PLAx) | Date | January 5, 2015 |
| Title | WATERMILL VENTURES, LTD., ET AL. v. CAPPELLO CAPITAL CORPORATION | | |

award in Cappello's favor.  Id. ¶ 27.  Soon thereafter, Cappello requested the release of the assets held in escrow to a bank account in the name of the Deutschman Trust.  Id. ¶ 28.  Watermill alleges, however, that Cappello continued to conceal the prior assignment by implying that there had been a post-award decision to have the funds directed to another entity, and failing to disclose the pre-arbitration assignment.  Id. ¶ 29.

On June 11, 2014, Watermill was served with a subpoena for production of documents by Americanwest Bank ("Americanwest") in relation to a matter pending in the United States District Court for the Eastern District of Washington.  Id. ¶ 30.  Watermill asserts that the purpose of the subpoena was to investigate whether Cappello had fraudulently directed the transfer of the shares paid by Watermill in satisfaction of the arbitration award, in order to avoid a judgment against Cappello held by Americanwest.  Id.  In August 2014, Watermill learned of a July 28, 2014 declaration under penalty of perjury filed by Alexander Cappello, CEO of Cappello, in the Americanwest lawsuit.  Id. ¶ 31.  In this declaration, Alexander Cappello stated: "on January 1, 2013, Cappello [] assigned to non-parties Rob Deutschman, the Deutschman Trust, and Cappello Group, Inc.—in exchange for past and future support in connection with the arbitration and otherwise—the entirety of its rights in any award that might later arise out of the Watermill arbitration."  Compl. Ex. I at 2–3.  The declaration explains that this assignment was "entered into . . . for the purpose of enabling [Cappello] to prosecute the arbitration when it could not financially do so on its own," and that "without the January 1, 2013 Agreement, Cappello [] could not have prosecuted the arbitration and there would be no award."[4]  Id. at 3.  Watermill asserts that it could not

_____

[4]Although Cappello has not produced the agreement between itself and the third parties, Cappello denies that the agreement effected an assignment in contravention of the Settlement Agreement.  Rather, Cappello asserts:

> The Disputed Promote Share was not assigned to Deutschman.
> Instead, what was assigned to Deutschman was a portion of the
> proceeds from the award after the Latrobe stock was sold.  This
> merely constituted a lien that Deutschman had on the proceeds of the
> Latrobe stock after its sale.  This is no different than if Cappello had
> borrowed money from a bank to pay the costs of the arbitration and
> the bank had a lien on the proceeds.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-08182-CAS(PLAx) | Date | January 5, 2015 |
| Title | WATERMILL VENTURES, LTD., ET AL. v. CAPPELLO CAPITAL CORPORATION | | |

have known of the alleged assignment prior to the discovery of this declaration because the existence of the agreement was never disclosed by Cappello and had not otherwise been disclosed to Watermill.  Compl. ¶ 32.

## III.   LEGAL STANDARD

### A.   Motion to Vacate an Arbitration Award

As an initial matter, Watermill requests that this Court apply to its complaint the standard applicable to determining a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court determines, however, that this standard is inapplicable.

Section 6 of the Federal Arbitration Act ("FAA") provides that "[a]ny application to the court [under the FAA] shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided."  9 U.S.C. § 6.  In O.R. Securities, Inc. v. Professional Planning Associates, Inc., as here, the losing party in an arbitration filed a complaint in district court seeking to vacate an award that it alleged was procured through fraud, and sought to conduct discovery on issues raised by the complaint.  857 F.2d 742, 744 (11th Cir. 1988).  The prevailing party in the arbitration successfully moved to dismiss the complaint, and the plaintiff appealed.  Id. at 744–45.  The Eleventh Circuit affirmed, explaining that the FAA and the Federal Rules of Civil Procedure require a party seeking to vacate an arbitration award to proceed by means of a motion to vacate and "do not permit a party to initiate a challenge . . . by filing a complaint."  Id. (quoting Interior Finish Contractors Ass'n of Del. Valley v. Drywall Finishers Local Union No. 1955, 625 F. Supp. 1233, 1240 (E.D. Pa. 1985)); see Fed. R. Civ. P. 81(a)(3) & 7(b).  The court explained that this distinction is important because it "affects the burdens of the various parties as well as the rule of decision to be applied by the district court," and that applying notice pleading standards would conflict with the FAA's purpose of providing for a speedy and inexpensive dispute resolution mechanisms.  Id. at 745–46.[5]

_____

Dkt. No. 20 at 10 n.5.

[5]The O.R. Securities court also rejected Watermill's argument that this Court should nonetheless apply Rule 12(b)(6) standards because Cappello chose to bring a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O' JS-6

| Case No. | 2:14-cv-08182-CAS(PLAx) | Date | January 5, 2015 |
|---|---|---|---|

| Title | WATERMILL VENTURES, LTD., ET AL. v. CAPPELLO CAPITAL CORPORATION |
|---|---|

Similarly, in Arora v. TD Ameritrade, Inc., a district court within this circuit treated a complaint as an application to vacate, reasoning that such an application is the "proper procedure for a party seeking to vacate an arbitration." No. CV 10-01216 CW, 2010 WL 2925178, at *6 (N.D. Cal. July 26, 2010). The court explained that allowing a party to file a complaint in such a circumstance could engender "full scale litigation," which would be contrary to the arbitration process's goal of providing for quick and final resolution of disputes. Id.; see also ANR Coal Co., Inc. v. Cogentrix of N.C., Inc., 173 F.3d 493, 496 n.1 (4th Cir. 1999) (finding erroneous a party's filing of "a civil complaint, rather than a motion to vacate," and reviewing the proceedings below under FAA standards); Domnarski v. UBS Fin. Servs., Inc., 919 F. Supp. 2d 183, 184 (D. Mass. 2013) (treating a complaint as a motion to vacate an arbitration award); Wash. Mutual Bank, F.A. v. Am. Fin. Network, 414 F. Supp. 2d 1155, 1157 (S.D. Fla. 2006) ("The rules of notice pleading under the Federal Rules of Civil Procedure do not apply to a motion to vacate an arbitration award."); cf. W. Emp'r Ins. Co. v. Jefferies & Co., Inc., 958 F.2d 258, 261 (9th Cir. 1992) (holding that a district court should have construed a "petition to vacate" as "notice of a motion to vacate within the meaning of 9 U.S.C. § 12, and explaining that "nomenclature is not controlling"). In line with this persuasive reasoning, and to prevent these proceedings from being treated as a full-blown civil action contrary to the FAA's purpose, the Court construes Watermill's complaint as a motion to vacate the arbitration award, and Cappello's motion to dismiss as an opposition thereto.

The FAA embodies a strong federal policy favoring arbitration and provides only limited grounds upon which a district court may vacate, modify, or correct an arbitration award. Lagstein v. Certain Underwriters at Lloyd's, London, 607 F.3d 634, 640 (9th Cir.2010). Moreover, the FAA "provides the exclusive grounds for challenging an

---

motion to dismiss. The Eleventh Circuit explained that "[t]he fact that this motion [to vacate] came before the district court on PPA's Motion to Dismiss Complaint does not affect our disposition of this case," and "review[ed] the proceedings below as though O.R. had filed a Motion to Vacate and PPA had opposed that motion." 857 F.2d at 746; see also Arora v. TD Ameritrade, Inc., No. CV 10-01216 CW, 2010 WL 2925178, at *3–7 (N.D. Cal. July 26, 2010) (applying the FAA's limited standard of review rather than Rule 12(b)(6)'s even though plaintiff had filed a complaint and defendant had filed a motion to dismiss that complaint).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL    'O' JS-6

| Case No. | 2:14-cv-08182-CAS(PLAx) | Date | January 5, 2015 |
|---|---|---|---|
| Title | WATERMILL VENTURES, LTD., ET AL. v. CAPPELLO CAPITAL CORPORATION | | |

arbitration award within its purview." <u>Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.</u>, 791 F.2d 1334, 1338 (9th Cir. 1986).  An arbitration award can be vacated only:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  "As is apparent from the language, these standards are highly deferential to the arbitrator." <u>Johnson v. Wells Fargo Home Mortg., Inc.</u>, 635 F.3d 401, 414 (9th Cir. 2011).  Where a party seeks to vacate an award based on fraud, that party "must show that the fraud was (1) not discoverable upon the exercise of due diligence prior to the arbitration, (2) materially related to an issue in the arbitration, and (3) established by clear and convincing evidence." <u>Lafarge</u>, 791 F.2d at 1339 (citing <u>Dogherra v. Safeway Stores, Inc.</u>, 679 F.2d 1293, 1297 (9th Cir. 1982)).  Vacatur on the ground that arbitrators exceeded their powers is proper "only when arbitrators purport to exercise powers that the parties did not intend them to possess or otherwise display a manifest disregard of the law," or "when the award is 'completely irrational.' " <u>Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.</u>, 341 F.3d 987, 997, 1002–03 (9th Cir. 2003) (en banc) (quoting <u>Todd Shipyards Corp. v. Cunard Line, Ltd.</u>, 943 F.2d 1056, 1059–60 (9th Cir. 1991)).  "The burden of establishing grounds for vacating an arbitration award is on the party seeking it." <u>U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.</u>, 591 F.3d 1167, 1173 (9th Cir. 2010).  In considering whether to vacate an award, district courts apply "an extremely limited review authority." <u>Kyocera</u>, 231 F.3d at 998.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-08182-CAS(PLAx) | Date | January 5, 2015 |
| Title | WATERMILL VENTURES, LTD., ET AL. v. CAPPELLO CAPITAL CORPORATION | | |

### B.    Discovery on a Motion to Vacate

In the context of an application to vacate an arbitration award, "discovery is 'available only in limited circumstances, where relevant and necessary to the determination of an issue raised by such an application.' " Thomas Kinkade Co. v. Hazelwood, No. C 06 7034 MHP, 2007 WL 217384, at *2 (N.D. Cal. June 26, 2007) (quoting Frere v. Orthofix, Inc., No. 99 CIV.4049 (RMB)(MHD), 2000 WL 1789641, at *4 (S.D.N.Y. 2000)). Because "the liberality that normally attends discovery in civil litigation is not appropriate in this context," Frere, 2007 WL 217384, at *4, the party challenging the arbitration award "has the burden of showing the alleged defect" in order to "justify discovery," Empresa Constructora Contex Limitada v. Iseki, Inc., 106 F. Supp. 2d 1020, 1024 (S.D. Cal. 2000). Further, district courts do not abuse their discretion "in not permitting further discovery when [the] issue of fraud was discoverable during arbitration." Woods v. Saturn Dist. Corp., 78 F.3d 424, 430 (9th Cir. 1996) (quoting O.R. Securities, 857 F.2d at 749)). Although a party seeking discovery "in support of an allegation of impropriety on the part of an arbitrator . . . must first show 'clear evidence of impropriety,' . . . . [a] lesser showing is required for issues unrelated to arbitrator misconduct." Thomas Kinkade, 2007 WL 217384, at *2.

## IV.    ANALYSIS

### A.    The Timeliness of This Action Under § 12 of the FAA

First, Cappello argues that Watermill waited too long too long to file its complaint under Section 12 of the FAA, which provides that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12; Lafarge, 791 F.2d at 1338. The arbitration award was issued on October 23, 2013, Compl. ¶ 27, and Watermill's petition to vacate was not filed until October 22, 2014. Therefore, Cappello argues that Watermill's attempt to vacate the award is barred regardless of its merits. Watermill, on the other hand, argues that because Cappello concealed the grounds for vacatur, equitable principles should toll § 12's limitations period.

Cappello contends (1) that § 12 is a jurisdictional requirement not subject to tolling, and (2) that even if equitable tolling were applicable, Watermill was put on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-08182-CAS(PLAx) | Date | January 5, 2015 |
| Title | WATERMILL VENTURES, LTD., ET AL. v. CAPPELLO CAPITAL CORPORATION | | |

inquiry notice of the alleged assignment long before Watermill filed its motion to vacate.[6] On the first point, the clear weight of authority holds that § 12 is a non-jurisdictional statute of limitations subject to tolling, waiver, and estoppel.[7]  But the Court need not resolve the question of whether Watermill has presented grounds to apply equitable

---

[6]Specifically, Cappello argues that its October 28, 2013 direction for Watermill to release funds to the Deutschman Trust put Watermill on notice "that the proceeds of the award were not being maintained by Cappello."  Cappello argues that Watermill "could and should have exercised due diligence in, at minimum, seeking clarification as to why the shares were not being maintained by Cappello."  Dkt. No. 36 at 5.

[7]Pfannestiel v. Merrill Lynch, 477 F.3d 1155, 1158 (10th Cir. 2007) (considering whether equitable tolling saved an otherwise time-barred motion to vacate because the doctrine "should be applied unless Congress provides to the contrary"); Foster v. Turley, 808 F.2d 38, 41 (10th Cir. 1986) (rejecting an argument that timely filing "is a jurisdictional prerequisite to a court action seeking to vacate an arbitration award" and finding § 12 to be "in the nature of a statute of limitations"); Strobel v. Morgan Stanley Dean Witter, No. 04-cv-1069-BEN (BLM), 2006 WL 3735739, at *3 (S.D. Cal. Dec. 11, 2006) (rejecting an argument that § 12 is jurisdictional, finding that the statute "is more appropriately viewed as a statute of limitations, and therefore is subject to equitable tolling."); Bauer v. Carty & Co., No. 04-2428, 2005 WL 948641, at *4 (W.D. Tenn. Mar. 9, 2005) ("Accordingly, based on the precedents cited and because it would be inequitable to allow a defendant to escape review of an arbitration award if it successfully concealed its wrongdoing for three months, the Court concludes that the equitable tolling doctrine is applicable to the time limit set forth in 9 U.S.C. § 12."); Int'l Bhd. Of Teamsters General Teamsters Union Local 406 v. FiveCap, Inc., No. 1:02-CV-928, 2003 WL 22697173, at *4 (W.D. Mich. Nov. 14, 2003) (concluding that § 12 is a non-jurisdictional statute of limitations); Sargent v. Paine Webber Jackson & Curtis, Inc., 687 F. Supp. 7, 9 (D.D.C. 1988) (finding equitable tolling applicable to § 12).  But see Penn. Eng'g Corp. v. Islip Res. Recovery Agency, 714 F. Supp. 634, 638 (E.D.N.Y. 1989) ("The Act's statute of limitations provisions recognize no common law provisions. Therefore, plaintiffs cannot use a common law exception to circumvent the Act's strict time limitations." (citing Florasynth, Inc. v. Pickholz, 750 F.2d 171, 175 (2d Cir. 1985))); Chilcott Entertainment L.L.C. v. John G. Kinnard Co., Inc., 10 P.3d 723, 726 (Colo. Ct. App. 2000) ("[T]he three-month limitations period in 9 U.S.C. § 12 is not subject to an equitable tolling exception").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| **CIVIL MINUTES - GENERAL** | | **'O' JS-6** |
|---|---|---|
| Case No. | 2:14-cv-08182-CAS(PLAx) | Date | January 5, 2015 |
| Title | WATERMILL VENTURES, LTD., ET AL. v. CAPPELLO CAPITAL CORPORATION | |

estoppel because, even assuming that it was timely, the motion to vacate should be denied for other reasons.

### B. Watermill Cannot Show That It Had No Duty to Arbitrate Because of Cappello's Alleged Assignment.

Both of Watermill's theories for vacating the award under the FAA depend on the predicate that Cappello's alleged assignment materially breached the Settlement Agreement in such a way that would have excused Watermill from arbitrating the underlying dispute, had Watermill known of the assignment.[8]  Cappello argues that the alleged assignment would not constitute a material breach because "[t]he purpose of the Settlement Agreement was to carve out the dispute regarding Cappello's share of the promoted equity, and submit that claim to binding and final arbitration," not to limit Cappello's ability to fund the arbitration.  The Court concludes that the alleged assignment, if proved, would at most give rise to a claim for damages—not the defense to arbitrability necessary to Watermill's arguments for vacatur.

The parties agree that New York law governs interpretation of the Settlement Agreement.  In New York, a "material" breach is "one which would justify the other party to suspend his own performance . . . or a breach which is so substantial as to defeat the purpose of the entire transaction."[9]  Lipsky v. Commonwealth United Corp., 551 F.2d

---

[8]As noted above, Cappello contends that its agreement concerning the transfer of an interest in the award was not an assignment in contravention of the Settlement Agreement.  Because Cappello has not provided a copy of the alleged agreement, and because Watermill has requested discovery into the matter, the Court assumes for purposes of these motions that an assignment was made in contravention of the Settlement Agreement.

[9]Watermill argues that materiality is a question of fact that cannot be decided as a matter of law.  But Watermill's cited cases teach that under New York law, the materiality of a breach is "[g]enerally . . . for the finder of fact, but 'where the evidence concerning the materiality is clear and substantially uncontradicted . . . the question is a matter of law for the court to decide.' "  Wiljeff, LLC v. United Realty Mgmt. Corp., 82 A.D.3d 1616, 1617 (N.Y. App. Div. 2011) (quoting Syracuse Orthopaedic Specialists, P.C. v. Hootnick, 42 A.D.3d 890, 900 (N.Y. App. Div. 2007)).  The Court assumes that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-08182-CAS(PLAx) | Date | January 5, 2015 |
| Title | WATERMILL VENTURES, LTD., ET AL. v. CAPPELLO CAPITAL CORPORATION | | |

887, 895 (2d Cir. 1976).  The Second Circuit has phrased the relevant inquiry as: "Would the innocent party have agreed to enter the contract without the inclusion of the disputed clause?"  Id.  New York law also draws a clear distinction between (1) contract terms that render rights or duties nonassignable and (2) covenants between parties not to assign rights or duties, with most anti-assignment provisions falling into the latter category.  See Allhusen v. Caristo Constr. Corp., 103 N.E.2d 891, 892 (N.Y. 1952) ("[In] the absence of language clearly indicating that a contractual right thereunder shall be nonassignable, a prohibitory clause shall be interpreted as a personal covenant not to assign."); Pro Cardiaco Pronto Socorro Cardiologia S.A. v. Trussell, 863 F. Supp. 135, 137 (S.D.N.Y. 1994) (applying New York law) ("With limited exception, contractual provisions prohibiting assignments are treated as personal covenants.").  Unless "expressly made void," "an assignment made in violation of a personal covenant prohibiting assignments is enforceable, although it does give rise to a damages action against the assignor."  Id. at 137–38.  To render an assignment void, the provision "must specifically eliminate the power as well as the right to assign."  University Mews Assoc. V. Jeanmarie, 471 N.Y.S.2d 457, 461 (N.Y. Sup. Ct. 1983).

Illustrating this distinction, one New York court considered an agreement between an employee and employer that read:

> It is hereby expressly agreed by and between the employee and the employer that during the period of employment the employee will make no assignment of and kind or nature of the wages earned by him either by power of attorney, conditional sales contract or any other agreement designed to compel the employer to pay such wages to any person other than the employee.

Sacks v. Neptune Meter Co., 258 N.Y.S. 254, 255-56 (N.Y. App. Term 1932), aff'd, 238 263 N.Y.S. 462 (N.Y. App. Div. 1933).  The court found that a breach of this provision gave the non-breaching party a cause of action for damages, but not the right to avoid its duty of paying wages:

Watermill's characterization of the alleged assignment is correct, so discovery would not aid the Court's resolution of the question of materiality.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O' JS-6**

| Case No. | 2:14-cv-08182-CAS(PLAx) | Date | January 5, 2015 |
|----------|-------------------------|------|-----------------|

| Title | WATERMILL VENTURES, LTD., ET AL. v. CAPPELLO CAPITAL CORPORATION |
|-------|------------------------------------------------------------------|

> The agreement does not provide that the wages are not assignable. It does not provide that an assignment of the wages, if attempted, shall vest no interest in the assignee. On the contrary, it consists merely of a stipulation that "the employee will make no assignment of any kind or nature of the wages." This was a personal promise of the employee which concerned the wages it is true, but which did not alter the quality or essential character of the right which was assigned. Upon breach of that collateral promise the employer was limited to a recovery against the employee of such damage as he might thereby have sustained. It is one thing to agree that a chose in action shall not be assignable, and that if assigned no right of action shall vest in the assignee. It is another and a different thing if the owner of the chose in action merely covenants with the obligor that he will not assign.

Id. at 262–63. The court concluded that the breach was merely of a "collateral stipulation" and that rather than a defense to enforceability of the contract, the defendant was "limited to a cause of action for damages against its employee." Id. at 264; see also id. at 264 (Frankenthaler, J., concurring) ("[New York] courts have held that a provision against the assignment of a claim for money does not make an assignment of such claim void, but merely gives the obligor a right of action against the obligee-assignor for damages which the former may have incurred by reason of the breach of that provision.").

Here, the agreement includes a covenant not to assign, devoid of any suggestion that an assignment would be invalid or would excuse the non-assigning party from performance of its own obligations, let alone the clear and "express" language New York law requires. The Anti-Assignment Provision reads in relevant part:

> The Parties expressly represent and warrant that they have not heretofore assigned or transferred, caused to be assigned or transferred or purported in any way to assign or transfer nor will they hereafter assign or transfer to any person, thing, corporation, partnership, association or other entity whatsoever any of the matters which are released herein or any rights in this agreement or the Disputed Promote Share.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-08182-CAS(PLAx) | Date | January 5, 2015 |
| Title | WATERMILL VENTURES, LTD., ET AL. v. CAPPELLO CAPITAL CORPORATION | | |

Platt Decl. Ex. 1 ¶ 6. This language is similar to the provision that the <u>Sacks</u> court found to constitute a covenant not to assign, giving rise only to a right to sue for damages. It contains no indication that an assignment would be void, would terminate the agreement, or would excuse any performance by the non-assigning party, and no indication that an assignee would not be able to enforce the contract (including the duty to arbitrate). <u>Compare</u> <u>C.U. Annuity Serv. Corp. v. Young</u>, 722 N.Y.S.2d 236, 292 (N.Y. App. Div. 2001) ("In the clause before us, the promisee did not merely agree that he would refrain from making an assignment; he agreed he was powerless to do so."). Applying this same logic, Cappello's alleged assignment would not have presented a defense to arbitratility as Watermill asserts.

Watermill cites one New York case in which breach of an anti-assignment provision was found to be material. But in that case, the finding of materiality was based on the fact that the agreement repeatedly "emphasized the importance of the identity of the developer." <u>Richard A. Hutchens CC, L.L.C. v. State of New York</u>, 59 A.D.3d 766, 771 (N.Y. App. Div. 2009). Specifically, the agreement granted a developer the exclusive option to acquire easements for certain residential projects, and stated that "the qualifications and identity of the Developer . . . are essential inducements" and that the "identity and qualifications of the Developer and its principals are the basis for the Agreement." <u>Id.</u> The <u>Hutchens</u> contract also defined the breach in question as a "termination event." <u>Id.</u> (brackets and internal quotation marks omitted).

The Settlement Agreement contains no comparable language suggesting that the Anti-Assignment Provision was an essential inducement. Moreover, the Anti-Assignment Provision contains a remedial clause providing that a party who breaches the provision through an assignment will indemnify the other party for any dispute arising out of such assignment, including an arbitration.[10] <u>See</u> Platt Decl. Ex. 1 ¶ 6. This further suggests that a breach of the Anti-Assignment Provision could not form the basis of a

---

[10]At oral argument, counsel for Watermill objected that the Court was reading in an "exclusive remedy" in tension with New York contract law. But the Court does not read the indemnity clause as an exclusive remedy; rather, it finds the fact that the parties included a remedial provision that did not involve a defense to arbitration relevant to the Court's interpretation of whether a breach of the Non-Assignment Provision would have excused Watermill from arbitrating the Equity Split Dispute.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                          'O' JS-6

| Case No. | 2:14-cv-08182-CAS(PLAx) | Date | January 5, 2015 |
| --- | --- | --- | --- |
| Title | WATERMILL VENTURES, LTD., ET AL. v. CAPPELLO CAPITAL CORPORATION | | |

valid ground to refuse to arbitrate.  Hutchens is also distinguishable because in that case, the anti-assignment provision "expressly prohibited claimant from assigning or transferring" any part of its interest "without the [counterparty's] written consent," rather than setting forth a covenant not to assign.  59 A.D.3d at 767.  The contract incorporated by reference clauses which provided "that the contract 'may not be assigned, and no part or portion may be . . . assigned . . . without the previous consent, in writing,' " of the other party.  Id. at 769.  The Hutchens court cited Special Products Manufacturing v. Douglass, which explained that "a clear and unambiguous prohibition is essential to effectively prevent assignment."  159 A.D.2d 847, 849 (N.Y. App. Div. 1990).  The Hutchens court found such a "clear and unambiguous prohibition" in the express prohibitory terms of the contract; as discussed above, such express prohibitory terms are lacking here.  59 A.D.3d at 769.

To support its argument that the Anti-Assignment Provision should be read as giving rise to a defense to arbitration, Watermill relies on a declaration from a Watermill principal involved in negotiation of the Settlement Agreement, stating that he requested the addition of language to the Non-Assignment provision prohibiting future assignments of rights in the Settlement Agreement or Disputed Promote Share.  Dkt. No. 32 (Karol Decl.) ¶¶ 3–5; see id. Ex. 1, Redline Version at 7.  Karol declares that he requested these changes to the Settlement Agreement because he "suspected at the time that [Cappello] was facing substantial financial challenges and [he] was concerned that [Cappello] would attempt to sell or assign the claim to a third party."  Id.  ¶ 6.  But this argument apparently relies on Karol's unexpressed subjective intent and cannot govern interpretation of the contracts' objective meaning.  See Nycal Corp. v. Inoco PLC, 988 F. Supp. 296, 301 (S.D.N.Y. 1997) ("Under New York law, [contract interpretation] is accomplished by examining the objective manifestations of the parties' intentions.").  Moreover, the Court finds relevant to interpretation of the contract the inequity of Watermill's view of the contract: Watermill appears to be arguing that the Anti-Assignment Provision was inserted to prevent Cappello from prosecuting a potentially meritorious claim.  Finally, such a contractual intent would be inconsistent with Cappello's presumed right to finance arbitration by borrowing money and pledging the proceeds of an arbitration award to secure a loan.  Accordingly, the Court finds that the alleged assignment would not have excused Watermill from its duty to arbitrate the Equity Split Dispute.  Watermill's argument that Cappello fraudulently procured the arbitration award by concealing that assignment therefore falls flat.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-08182-CAS(PLAx) | Date | January 5, 2015 |
| Title | WATERMILL VENTURES, LTD., ET AL. v. CAPPELLO CAPITAL CORPORATION | | |

**C.     Even if the Alleged Assignment Would Have Provided a Defense to
Arbitrability, Watermill Has Not Presented Grounds for Vacating the
Award Under the FAA.**

As indicated above, the Court is unpersuaded that the alleged assignment would
have entitled Watermill to avoid arbitrating the Equity Split Dispute, had Watermill
known about it.  Watermill's motion to vacate fails on that basis alone.  Even if
Watermill's argument on that front were persuasive, however, Watermill has also failed
to show that the alleged misconduct fits within a ground for vacating an arbitration award
under the FAA.

**1.     Watermill's Argument that the Award Was Procured by Fraud**

Watermill argues that the award was procured by fraud within the meaning of 9
U.S.C. § 10(a)(1) because, by knowingly concealing its breach of the Anti-Assignment
provision from Watermill and the arbitrator, Cappello induced Watermill to submit to
arbitration based on the fraudulently induced understanding that Cappello "was the sole
and actual Claimant and that the arbitration agreement was enforceable."  See Compl.
¶¶ 36–38.  "[I]n order to protect the finality of arbitration decisions, courts must be slow
to vacate an arbitral award on the ground of fraud."  Dogherra, 679 F.2d at 1297.  As
noted above, a party seeking to vacate an award based on fraud "must show that the fraud
was (1) not discoverable upon the exercise of due diligence prior to the arbitration, (2)
materially related to an issue in the arbitration, and (3) established by clear and
convincing evidence."  Lafarge, 791 F.2d at 1339 (citing Dogherra, 679 F.2d at 1297).
Watermill has failed to meet its burden under this test or show that discovery would aid
resolution of this issue.

Cappello argues that, even if it could be found to have fraudulently concealed an
assignment that materially breached the Settlement Agreement, that fraud would not
"materially relate to an issue in the arbitration" as required to vacate an award under §
10(a)(1) because the arbitration decided only whether Cappello was entitled to a share of
the Disputed Promote Share.  Cappello asserts that any fraud in inducing Watermill to
submit to arbitration is simply irrelevant because "how Cappello intended to fund the
costs of the arbitration, or the propriety of any alleged assignment," were not considered
by the arbitrator.  Watermill responds based on Alexander Cappello's declaration in the
Americanwest litigation that the alleged fraud was material to the "fundamental issue [of]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | **'O' JS-6** |
|---|---|---|---|
| Case No. | 2:14-cv-08182-CAS(PLAx) | Date | January 5, 2015 |
| Title | WATERMILL VENTURES, LTD., ET AL. v. CAPPELLO CAPITAL CORPORATION | | |

whether the dispute was arbitrable" in the first place, "because without the fraud, there would have *been* no arbitration." Dkt. No. 31 at 15–16.

Although precedents involving similar situations are scarce, Cappello cites one supportive case, Terk Technologies v. Dockery, 86 F. Supp. 2d 706 (E.D. Mich. 2000). In Terk, parties seeking to vacate an arbitration award asserted that they consented to arbitration only because they were confronted with adverse testimony from a former employee, whom they claimed the opposing party had paid $10,000 to testify falsely. Id. at 707–08. The court rejected an argument that the award was procured by fraud, reasoning that even if the alleged perjury caused the defendants to submit to arbitration, that testimony "was not presented to, or considered by, the arbitrators," so the *award* could not have been procured by fraud. Id. at 709–10. Additionally, one Ninth Circuit case provides some guidance into the scope of fraud covered by § 10(a)(1). In Kyocera, 341 F.3d at 987, a party sought to vacate an arbitration award under § 10(a)(1) because its opponent "improperly induced it to agree to arbitration by asserting that [an] expanded judicial review provision would be enforceable." Id. at 1003. The Ninth Circuit rejected this argument, reasoning: "[T]his is not the type of inducement that allows an award to be vacated." The court noted that there was "no evidence that the arbitrators' lengthy and considered decision contains or was based on any conduct that approaches the type that warrants vacatur" under the FAA. Id.[11]

Watermill does not assert that any fraud prevented it from asserting a substantive defense in the arbitration proceedings, affected the evidence on which the arbitrator relied, or otherwise affected the fairness of the arbitration award. Rather, Watermill argues that Cappello's misstatements or omissions prevented it from refusing to arbitrate in the first place. Watermill admits that is aware of no case in which a court has vacated an arbitration award for fraud that induced a party to arbitrate, rather than for fraud that affected the fairness of the hearing or award itself. Nonetheless, Watermill argues that

---

[11]Kyocera is not directly on point because in that case, the party seeking vacatur was in "as good (or bad) a position to evaluate the prospects that a final judicial ruling on the question would uphold the expanded review authority." 341 F.3d at 1003. Still, the rest of the Ninth Circuit's reasoning on this issue suggests that fraud that allegedly induced a party to arbitrate, but did not affect the fairness of the arbitrator's decision, is not "the type of inducement that allows an award to be vacated." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' JS-6 |
|---|---|---|---|

| Case No. | 2:14-cv-08182-CAS(PLAx) | Date | January 5, 2015 |
|---|---|---|---|
| Title | WATERMILL VENTURES, LTD., ET AL. v. CAPPELLO CAPITAL CORPORATION | | |

materiality element is met because "the issue of arbitrability is a threshold issue in every arbitration." Dkt. No. 37 at 5.  But the cases Watermill cites in support of this proposition concern courts' traditional responsibility of deciding whether the parties entered into a valid agreement to arbitrate, not a threshold issue considered *in* every arbitration.  See Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 299–300 (2010) ("[C]ourts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor . . . its enforceability or applicability to the dispute is in issue."); Momot v. Mastro, 652 F.3d 982, 987 (9th Cir. 2011) ("[G]ateway issues of arbitrability are presumptively reserved for the Court.").

Watermill also argues that the Ninth Circuit's "materially related to an issue in the arbitration" standard  "has no meaningful application here" because it developed to guide the "overwhelming majority of cases based on fraud under § 10(a)(1) [that] involve a claim that fraudulent evidence was presented to (or evidence was fraudulently withheld from) the arbitration tribunal."  Dkt. No. 37 at 5.  Watermill contends that the standard is a useful guide to the typical § 10(a)(1) case because it weeds out immaterial fraud that did not actually influence the award, but does not apply to the "fundamentally different" case where a party argues that fraud prevented it from raising the threshold issue of arbitrability.  Id. at 5–6.  But this begs the question of whether the latter type of case is cognizable under § 10(a)(1) at all, and Watermill points to no case suggesting that it is. In light of the FAA's strong policy in favor of the finality and limited review of arbitration awards, the Court rejects Watermill's request to disregard the existing § 10(a)(1) test, which the Ninth Circuit has repeatedly stated in mandatory terms.  See, e.g., A.G. Edwards & Sons, Inc. v. McCullough, 967 F.2d 1401, 1404 (9th Cir. 1992) ("We have held that, in order to justify vacating an award because of fraud, the party seeking vacation *must* show that the fraud was . . . materially related to an issue in the arbitration." (emphasis added) (quoting Lafarge, 679 F.2d at 1297)).  The Court concludes that Watermill has not presented grounds for vacating the arbitration award under § 10(a)(1), or for discovery in pursuit of that ground for vacatur.[12]

---

[12]Although the Court need not reach the issue to decide the pending motions, the Court additionally notes its doubts whether Cappello's alleged behavior—making statements that *could* be interpreted as implied denials of assignment, and failing to produce documents concerning or otherwise reveal the assignment—rises to the level of fraud required to vacate an award under the FAA, which "modifies the common law by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | **'O' JS-6** |
|---|---|---|---|
| Case No. | 2:14-cv-08182-CAS(PLAx) | Date | January 5, 2015 |
| Title | WATERMILL VENTURES, LTD., ET AL. v. CAPPELLO CAPITAL CORPORATION | | |

2.      Watermill's Argument that the Arbitrator Exceeded His Powers

Based on the same theory of material breach and fraudulent concealment, Watermill argues that it was not obligated to arbitrate the dispute, and that the arbitrator "exceeded [his] powers" under FAA section 10(a)(4) by issuing an award.  See Compl. ¶¶ 33-35.  This statutory ground for vacatur, however, does not apply here because Watermill does not argue that the arbitrator decided any issue outside of the scope of the agreement to arbitrate.  Watermill cites no on-point authority for its argument that the provision applies where, as alleged here, breach of contract and fraud prevented a party from contesting the arbitrability of the entire dispute.  Therefore, even assuming that Cappello concealed an assignment that would have excused Watermill from its duty to arbitrate, Watermill has presented no ground for vacatur under § 10(a)(4).

Watermill relies on cases in which an award was vacated because the arbitrator decided issues outside of the scope of the matters presented for arbitration.[13]  Watermill concedes that it is unaware of a case where an award concerning an issue clearly within the scope of an arbitration agreement was vacated because a party breached a contract, excusing another party from arbitrating any part of the dispute.  And Watermill does not contend that the arbitrator decided any issue outside of the Settlement Agreement's

---

requiring a greater level of improper conduct."  Pac. & Arctic Ry. & Nav. Co. v. United Transp. Union, 952 F.2d 1144, 1148 (9th Cir. 1991).

[13]See, e.g., Hughes Aircraft v. Elec. & Space Technicians, Local 1553, AFL-CIO, 822 F.2d 823, 827 (9th Cir. 1987) (arbitrator exceeded powers to determine whether a single promotion of an employee violated an agreement, by considering the merits of distinct subsequent promotions); Delta Queen Steamboat Co. v. District 2 Marine Eng'rs Beneficial Ass'n, AFL-CIO, 899 F.2d 599, 604 (5th Cir. 1989) (arbitrator exceeded powers by reinstating employee where bargaining agreement gave the arbitrator no power to do so); Orion Shipping & Trading Co. v. E. States Petroleum Corp. of Panama, S.A., 312 F.2d 299, 300–01 (2d Cir. 1963) (arbitrator exceeded powers in determining the obligations of a corporation "which was clearly not a party to the arbitration proceeding"); OMG, LP v. Heritage Auctions, Inc., 11 F. Supp. 3d 740, 743–36 (N.D. Tex 2014) (arbitrator exceeded powers to determine disputes arising from or relating to certain agreements, by finding that the agreements were never validly formed).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:14-cv-08182-CAS(PLAx) | Date | January 5, 2015 |
| Title | WATERMILL VENTURES, LTD., ET AL. v. CAPPELLO CAPITAL CORPORATION | | |

arbitration clause, which covered "whether Cappello is entitled to a Disputed Promote Share from Watermill . . . and the amount to which Cappello is entitled, if any." Platt Decl. Ex. 1. at 22. Watermill attempts to shoehorn this case into § 10(a)(4) through analogy to situations in which courts have vacated awards where a party's pre-arbitration conduct constituted a waiver of the right to arbitrate, but this attempt is unpersuasive.

In one of Watermill's cited cases, a party denied the existence of an agreement for fifteen months. But when its counterparty filed a lawsuit against it, the party that had denied the existence of the agreement demanded arbitration based on an arbitration provision contained in that agreement. O.J. Distrib., Inc. v. Hornell Brewing Co., Inc., 340 F.3d 345, 357, 347 (6th Cir. 2003). The matter proceeded to arbitration over the plaintiff's objection, and the arbitrators issued an award dismissing the plaintiff's claims on the ground that the plaintiff had not initiated arbitration within 180 days as required by the arbitration provision. Id. at 348. The plaintiff appealed the district court's stay of its lawsuit pending arbitration, arguing that the defendant had waived its right to arbitration. Id. at 355. The Sixth Circuit vacated the district court's confirmation of the award, reasoning that the defendant "waived its right to arbitrate due to its actions of engaging in negotiations . . . while at the same time denying the existence of the Agreement and, therefore, the arbitration provision, to the prejudice of Plaintiff." Id. at 357. Watermill also cites Kendall State Bank v. West Point Underwriters, LLC, No. 10-2319-JTM, 2013 WL 66020 (D. Kan. Jan. 4, 2013). There, WPU entered into a loan agreement with Aleritas, which sold interests in the loan to third parties including Kendall. Id. at *1. WPU subsequently filed an action against then-insolvent Aleritas seeking to rescind its obligations under the loan; Kendall successfully intervened in and obtained dismissal of that case, and then filed its own action against WPU, in which WPU participated until discovery was complete. Id. At this point, WPU initiated an *ex parte* arbitration proceeding without giving notice to Kendall, and then declared that it had obtained an arbitration award barring Kendall's lawsuit. Id. The court found that WPU had waived its right to arbitrate by "engag[ing] the lawsuit on its merits, mov[ing] to dismiss Kendall's claim, and fil[ing] an answer and counterclaim—all without contending it wanted to arbitrate any dispute relating to the Loan." Id. at *3. The court also noted that WPU's attempt to resolve the dispute through arbitration without even giving notice to Kendall smacked of judicial manipulation. Id. at *4.

These cases involved waiver of the right to arbitrate through litigation-related behavior inconsistent with that right, and are not factually analogous to the instant case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O' JS-6**

| Case No. | 2:14-cv-08182-CAS(PLAx) | Date | January 5, 2015 |
|---|---|---|---|
| Title | WATERMILL VENTURES, LTD., ET AL. v. CAPPELLO CAPITAL CORPORATION | | |

Moreover, neither court considered the "exceeded their powers" standard or any other provision of § 10(a); rather, each court applied a different circuit's standard for waiver of the right to arbitrate.  Additionally, the <u>Kendall</u> court specifically stated that the FAA's limited arbitration award review provisions did not apply to that case because the party seeking to vacate the award was not a party to, nor given notice of, the arbitration.  2013 WL 66020, at *3 ("Although the FAA and <u>Hall</u> establish restrictions on the ability of participants to the arbitration to challenge the ultimate award, they do not circumscribe the ability of non-participants to challenge the propriety or validity of the ruling.").  In short, Watermill has not cited (and the Court has not found) any case vacating an award under § 10(a)(4) under circumstances analogous to this case.  Therefore, especially in light of the extremely limited grounds for setting aside an arbitration award, the Court finds that Watermill has not presented sufficient reasons to vacate the award on the ground that the arbitrator exceeded his powers, or to allow further discovery to help advance this theory.[14]

[14]Cappello also argues that Watermill's challenge to the arbitrator's authority to arbitrate the dispute is not cognizable because the Ninth Circuit has "long recognized a rule that a party may not submit a claim to arbitration, and later challenge the authority of the arbitrator to act after receiving an unfavorable result."  <u>Fortune, Alsweet & Eldridge, Inc. v. Daniel</u>, 724 F.2d 1355, 1357 (9th Cir. 1983); <u>see also</u> <u>Nghiem v. NEC Elec., Inc.</u>, 25 F.3d 1437, 1440 (9th Cir. 1994) (holding that a party waived the argument that the arbitrator lacked authority by initiating arbitration, attending hearings, presenting evidence, and submitting a post-hearing brief, even though the party filed suit in state court before the arbitrator announced his decision); <u>compare</u> <u>Nagrampa v. MailCoups, Inc.</u>, 469 F.3d 1257, 1280 (9th Cir. 2006) (en banc) (finding that a party had not waived her right to challenge arbitrability where she objected to arbitrability at the outset, never withdrew that objection, and did not proceed to arbitration on the merits).  Capello's cited cases did not involve scenarios in which the party challenging arbitrability learned of the alleged ground for non-arbitrability after the arbitration proceedings.  But in light of the Court's determination that the alleged conduct simply does not fit within § 10(a)(4), the Court need not reach this issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O' JS-6**

| Case No. | 2:14-cv-08182-CAS(PLAx) | Date | January 5, 2015 |
| --- | --- | --- | --- |
| Title | WATERMILL VENTURES, LTD., ET AL. v. CAPPELLO CAPITAL CORPORATION | | |

## V.    CONCLUSION

Even assuming that the alleged assignment took place, such assignment would not have given Watermill a defense to arbitrating the underlying dispute. And even if it would have, no court has ever vacated an arbitration award based on fraud of the type alleged. Therefore, the Court finds that Watermill has not presented grounds justifying vacatur of an arbitration award, or presented reason to allow further discovery in this matter. Watermill's complaint seeking to vacate the arbitration award is DISMISSED WITH PREJUDICE. Watermill's motion for discovery in support of its motion to vacate is DENIED.

IT IS SO ORDERED.

|  | 00 | : | 25 |
| --- | --- | --- | --- |
| Initials of Preparer | | CMJ | |